UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DANIEL EDWARDS,

                              Petitioner,

       vs.                                9:02-CV-1061
                                           (S.J. McAvoy)

LEONARD PORTUONDO,
Superintendent,

                              Respondent.

_____

APPEARANCES                       OF COUNSEL

DANIEL EDWARDS
Petitioner pro se

ELIOT SPITZER                   ROBIN A. FORSHAW
Attorney General of the         Asst. Attorney General
State of New York
Attorney for Respondent

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

     Petitioner has brought this action for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  Petitioner challenges a judgment of conviction of the Schoharie

County Court.  On October 16, 1998, petitioner pled guilty to Murder, First Degree,

and on April 28, 1999, petitioner was sentenced to 25 years to life imprisonment.  The

Appellate Division, Third Department reversed petitioner's conviction on July 20, 2000. *People v. Edwards*, 274 A.D.2d 754, 712 N.Y.S.2d 71 (3d Dep't 2000). The prosecution sought and received permission to appeal the reversal of petitioner's conviction to the New York Court of Appeals. Petitioner cross-appealed on suppression issues.

On July 5, 2001, the New York Court of Appeals reversed the Appellate Division's decision, reinstated petitioner's guilty plea, and remitted the case to the Appellate Division for further proceedings. *People v. Edwards*, 96 N.Y.2d 445, 729 N.Y.S.2d 410, 754 N.E.2d 169 (2001). The New York Court of Appeals dismissed petitioner's cross-appeal. On September 20, 2001, the Appellate Division on remittitur, affirmed petitioner's judgment of conviction and sentence. Petitioner did not seek further review.

Petitioner raises five claims for this court's review:

1.  His statements were the product of an unlawful arrest, and the trial court's failure to suppressed them violated petitioner's Fourth and Fourteenth Amendment rights.

2.  Petitioner's statements were coerced in violation of his Fifth and Fourteenth Amendment rights.

3.  Petitioner's statements were obtained in violation of his Sixth and Fourteenth Amendment rights to the assistance of counsel.

4.  Petitioner pled guilty while the prosecutions "death notice" was still pending in violation of a New York Court of Appeals decision, and thus, in violation of petitioner's constitutional rights to due process and equal

protection, and petitioner should have been allowed to withdraw the plea.

5.    Because petitioner's plea was entered while the "death notice" was pending, petitioner's Fifth Amendment right preventing self-incrimination, and his Sixth Amendment right to a jury trial were violated.

Respondent has filed an "Affidavit in Opposition" and a memorandum of law, together with the pertinent state court records.[1] (Dkt. Nos. 9, 12).  Respondent argues for denial of the petition, claiming that some issues are barred from review, and the rest have no merit.  For the following reasons, this court agrees with respondent and will recommend denial of the petition.

## DISCUSSION

**1.    Facts**

This case arose from the shooting death of Frank Arroyo in his home in Schoharie County on May 12, 1997.  The victim's estranged wife, Donna Arroyo asked petitioner to kill her husband in exchange for the proceeds of Mr. Arroyo's life insurance policy.  At the time of the murder, Donna Arroyo was dating petitioner's stepbrother, Cary McKinley.

Shortly after the murder, petitioner and his stepbrother became suspects.  The

---

[1] The state court records are listed on page 2 of respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus. (Dkt. No. 9).  Some of the state court records are attached as exhibits to respondent's affidavit (Dkt. No. 9, Exhibits A-I), however, the Record on Appeal and Petitioner's Appendix accompanying his New York Court of Appeals briefs were submitted separately and are not assigned a docket number since they will ultimately be returned to respondent.

two men were living in Florida, and members of the New York State Police went to
Florida to investigate.  While in Florida, an informant told the officers that petitioner
had done the shooting.  Police officers from New York, working with members of the
Florida Department of Law Enforcement (FDLE) located petitioner, who was working
at a Winn-Dixie construction site in Port Charlotte, Florida, and went to speak with
him about the murder.

The officers identified themselves, told petitioner that they were investigating a
shooting in upstate New York, and asked petitioner if he would speak with them.
Record on Appeal (RA) at 863-64.[2]  Petitioner and his father, who was also working at
the construction site, agreed to take the officers to find petitioner's step brother, Cary
McKinley. (RA at 866-67).  After picking up Mr. McKinley, the officers took all three
men to the FDLE headquarters in Orlando, Florida. (RA at 868-71).  After their arrival
at FDLE headquarters, petitioner was read his *Miranda* rights, agreed to speak with
the officers, and ultimately confessed to the murder of Frank Arroyo both orally and in
writing. (RA 872-78, 881-93).

Petitioner was subsequently indicted in Schoharie County, and charged with
one count of Murder, First Degree; one count of Murder, Second Degree; one count of
Conspiracy, Second Degree; and one count of Criminal Possession of a Weapon,

---

[2] Since petitioner pled guilty, there was no trial in his case, however, petitioner had a lengthy
suppression hearing, at which the facts were developed.  The page citations are to the Record on
Appeal which was included with the State court papers in this case.

Second Degree. (RA at 11-14).  On January 26, 1998, the prosecutor filed a notice of intent to seek the death penalty. (RA at 105).[3]

Petitioner moved to suppress the statements that he had made to the police in Florida.  Petitioner first argued that he was in "custody" prior to making his statements, and that there was no probable cause for his arrest, therefore, his statements should be suppressed.  Petitioner also argued that his written statement should be suppressed because right to counsel had attached prior to his signing the statement. After a lengthy suppression hearing, in a written decision, the trial court denied the motion, finding that petitioner was not "in custody" prior to his oral statements to the officers, and that, notwithstanding some changes that had been made to the time listed on the written statement, he made the statement prior to the time that his right to counsel attached. (RA 1353-58).  The trial court's decision was dated September 28, 1998.

On October 16, 1998, petitioner agreed to plead guilty to one count of Murder, First Degree, in exchange for a prison sentence of 25 years to life and his cooperation in the prosecution of co-defendant Donna Arroyo.  The plea agreement was sent to the trial court judge for review.  Prior to allowing petitioner to plead guilty, the trial court judge, George R. Bartlett, III, held a hearing in chambers because he was aware that

---

[3] The actual Notice of Intent to Seek the Death Penalty does not appear to be in the record, however, the withdrawal of that Notice is at RA 105, and it indicates that the Notice was filed on January 26, 1998.

the New York Court of Appeals had just heard argument in *Hynes v. Tomei*, 92

N.Y.2d 613, 684 N.Y.S.2d 177 (1998).  Based on *Hynes*, Judge Bartlett expressed his

concern that petitioner's plea would be "illegal" if he pled guilty while the

prosecutor's "death notice" was pending.

The in-chambers hearing was transcribed and is part of the record on appeal.

(RA at 41-72).  Petitioner and all counsel were present and participated in the

hearing.[4]  The prosecutor argued that the death notice should stay in place until the

time of sentencing, otherwise, petitioner would have an incentive to breach his plea

agreement, and go to trial without fear that the death penalty could be sought after the

death notice had been withdrawn.[5]  (RA at 52-58).  Ultimately, the Judge decided that

he would only accept the plea if the death notice was withdrawn after the plea

allocution, but ***prior to the court's acceptance of the plea.*** (RA at 71-72).

Later the same afternoon, petitioner appeared with his attorneys and the

prosecutor in open court to enter a plea.  Petitioner specifically waived his

constitutional rights and admitted facts that were sufficient to establish his guilt to

first degree murder. (RA at 77-100).  Petitioner admitted that he was entering the plea

freely and voluntarily, that he had discussed all the legal and constitutional issues

---

[4] Because this was a death penalty case, petitioner had two attorneys.

[5] Under New York Law, a notice of intent to seek the death penalty may be withdrawn at any time by written notice, filed with the court and served upon the defendant. N.Y. CRIM. PROC. LAW § 250.40(4).  However, once the notice is withdrawn, it may ***not*** be refiled. *Id.*

involved with his attorneys, and understood the rights he was waiving by pleading guilty. (RA at 83-84, 86-88). Judge Bartlett specifically informed petitioner **twice** that he would be entitled to continue his not guilty plea, and he could proceed to trial with the aid of his attorneys. (RA 85, 95-96). As part of the plea bargain, petitioner waived his right to appeal, with the exception of his right to appeal the denial of the suppression motion. (RA at 91-92). Petitioner executed a written waiver of appeal form. (RA at 94).

Judge Bartlett also stated for the record that he found that petitioner understood the nature of the charges against him, the nature of the plea, the possible sentence, and that petitioner had discussed his "legal and constitutional rights" with his attorneys, and understood that he was waiving those rights. (RA at 101). Judge Bartlett specifically found that petitioner's plea was voluntary and "of his own free will." (RA at 101). The prosecutor then filed a written document, indicating withdrawal of the death penalty notice, (RA at 105), and Judge Bartlett formally accepted petitioner's guilty plea. (RA at 99-100, 102).

On December 22, 1998, after the entry of petitioner's guilty plea, the New York Court of Appeals decided *Hynes v. Tomei, supra*. As a result of that decision, petitioner moved to withdraw his guilty plea, arguing that it was invalid under *Hynes*. (RA at 15-22). Judge Bartlett denied petitioner's motion in a written opinion. *People v. Edwards*, 180 Misc. 2d 564, 690 N.Y.S.2d 404 (Schoharie Cty. 1999). Petitioner

was sentenced to 25 years to life imprisonment on April 28, 1999 in accordance with the plea agreement. (RA at 122-27).

## 2.    **Exhaustion and Procedural Default**

The habeas statute requires the exhaustion of state court remedies prior to bringing an application for federal habeas corpus relief. 28 U.S.C. § 2254(b). However, if petitioner no longer has remedies available in state court with regard to these claims they are "deemed" exhausted but are also procedurally defaulted. *Bossett v. Walker*, 41 F.3d 825 (2d Cir. 1994)(citing *Grey v. Hoke*, 933 F.2d 117, 120-121 (2d Cir. 1991)), *cert. denied*, 514 U.S. 1054 (1995).

A state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or establish that failure of the court to consider the claim will result in a miscarriage of justice. *Id.* at 748.  A miscarriage of justice will have occurred if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Respondent argues that the petitioner's suppression claims are unexhausted and procedurally defaulted.  Petitioner raised his suppression claims in the Appellate Division, and that court specifically denied those claims on the merits. *People v.*

8

*Edwards*, 274 A.D.2d at 758-60, 712 N.Y.S.2d at 76-77.  Since the Appellate Division

also held in petitioner's favor on his guilty plea claim, the prosecutor obtained leave to

appeal, and petitioner cross-appealed to the New York Court of Appeals.  Although in

his cross-appeal, petitioner challenged the denial of his suppression claims, the Court

of Appeals dismissed the cross-appeal, stating in a footnote that it was not

"empowered" to review the petitioner's challenge to the denial of his suppression

claims because the Appellate Division's decision was not "adverse" to petitioner

within the meaning[6] of N.Y. CRIM. PROC. LAW § 450.90(1). *People v. Edwards*, 96

N.Y.2d at 451 n.2, 729 N.Y.S.2d at 413 n.2, 754 N.E.2d at 172 n.2.

The Court of Appeals then granted the prosecutor's appeal, reversed the

Appellate Division's decision invalidating petitioner's plea, reinstated the plea, and

remitted the case to the Appellate Division to "conduct the necessary review of the

record." *Id.* 96 N.Y.2d at 456, 729 N.Y.S.2d at 417, 754 N.E.2d at 176.  On remittitur,

_____

[6] Although the Court of Appeals did not specify why the Appellate Division's decision
regarding the suppression issues was not "adverse" to the petitioner, a review of the New York
Criminal Procedure Law statute governing appeals illustrates the court's rationale.  Section 450.90(1)
provides that an appeal by permission from the Appellate Division to the Court of Appeals is
authorized upon any "adverse" or "partially adverse" order of the intermediate court.  The section
then defines the terms "adverse" and "partially adverse."  An order is adverse to the defendant when it
affirms the "judgment, sentence, or order appealed from" and is adverse to the prosecutor when it
reverses the "judgment, sentence, or order appealed from." N.Y. CRIM. PROC. LAW § 450.90(1).  An
order is "partially" adverse only when it "modifies" the judgment or order appealed from. *Id.*  Thus,
because the Appellate Division reversed petitioner's judgment, the order was adverse only to the
prosecutor, and the fact that the Appellate Division affirmed the trial court's suppression decision did
not make the order "partially" adverse to petitioner so that he could appeal from that order.
According to the statute, the order could only be "partially" adverse to petitioner if the Appellate
Division had "modified" the trial court's judgment.  Thus, the Court of Appeals found that it could
not consider petitioner's cross-appeal on the suppression issues.

the Appellate Division found that petitioner waived his right to appeal and entered a

knowing and voluntary plea, supported by evidence of guilt, and was sentenced in

accordance with the plea agreement. *People v. Edwards*, 286 A.D.2d at 800, 730

N.Y.S.2d at 260.  The Appellate Division further stated "that defendant's contentions

concerning the suppression of his statements were previously reviewed and found to

be unavailing." *Id.*  The court, thus, reaffirmed its prior ruling on the suppression

issues.

Petitioner took ***no further appeal*** from the Appellate Division's decision.

Respondent argues that the suppression issues are thus, unexhausted since the Court

of Appeals never had the opportunity to consider them.  Respondent further argues

that because petitioner may not now return to state court to seek review of these

claims, the court may "deem" the claims exhausted, but must consider that the claims

are also procedurally barred from review.

Petitioner could have applied for leave to appeal the Appellate Division's

decision after remittitur since the order was now "adverse" to petitioner. N.Y. CRIM.

PROC. LAW § 450.90(1).  Because petitioner did not apply for leave to appeal, the

Court of Appeals never had the opportunity to consider the suppression issues.[7]

---

[7] The court would point out that petitioner's plea claim is exhausted even though he did not
apply for leave to appeal to the Court of Appeals after the Appellate Division's remittitur decision.  In
this case, petitioner is challenging the original Court of Appeals decision on the Constitutional issue
of whether he could plead guilty when the death notice was pending.  The New York Court of
Appeals decided that issue fully on the merits.  The Appellate Division on remittitur decided only that

Even though petitioner's suppression claims are unexhausted, he cannot now return to state court because his time to appeal the Appellate Division's decision has expired. *See* N.Y. CRIM. PROC. LAW § 460.10(5)(a)(providing a thirty day time limit for an application for leave to appeal). Because he cannot return to State court with his suppression claims, these claims may be "deemed" exhausted, but are also procedurally defaulted. Petitioner can cite no cause for or prejudice resulting from the procedural default, and he has not shown that the failure of the court to consider these claims would result in a miscarriage of justice. Thus, none of petitioner's suppression claims may be considered in this federal proceeding.

The court would also note that insofar as the suppression claims raised Fourth Amendment violations of lack of probable cause, they would be barred by *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 481-82; *see also Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

---

petitioner waived his right to appeal and that his plea was voluntary. The issue that petitioner raises in this petition has been brought to the highest court in New York and has been decided on the merits, and petitioner did ***not*** have to raise the issue again after the Appellate Division's decision. Therefore, the plea issue is exhausted, even if the suppression issues are not.

11

The Second Circuit has determined this to mean that review of a Fourth

Amendment claim on habeas review is proper only if: (1) the state has provided no

corrective procedures at all to redress the alleged fourth amendment violations; or (2)

the state has provided a corrective mechanism, but the defendant was precluded from

using that mechanism because of an unconscionable breakdown in that process.  *See*

*Capellan*, 975 F.2d at 70; *Gates v. Henderson*, 568 F.2d 830, 839-40 (2d Cir. 1977)

(en banc), *cert. denied*, 434 U.S. 1038 (1978).

New York provides an approved mechanism for litigating Fourth Amendment

claims.  *See Capellan*, 975 F.2d at 70.  Petitioner utilized that mechanism, was

afforded a suppression hearing, and his motion to suppress was denied.  Petitioner did

not wait for the evidence to be admitted at trial because he pled guilty to the charges

after the denial of his motion to suppress.  In any event, *Stone v. Powell* precludes

petitioner's challenge to the denial of his suppression motion on Fourth Amendment

grounds.

Although *Stone* dealt with the suppression of physical evidence on Fourth

Amendment grounds, the rationale of *Stone* has been extended to a Fourth

Amendment challenge to the admission of a confession, as long as the statement was

voluntary and obtained in accordance with *Miranda*. *See Cardwell v. Taylor*, 461 U.S.

571, 572-73 (1983).  In this case, petitioner had an extensive suppression hearing, and

thus, to the extent that the petitioner would have challenged the admission of his

confession on Fourth Amendment grounds, as opposed to the Fifth and Sixth Amendment challenges, that claim would have been barred by *Stone* even if the claims had not been procedurally defaulted.

**3.**   **Standard of Review**

The standard of review in a habeas action depends upon whether the state court considered petitioner's constitutional claims "on the merits."  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the state court ruling *on the merits* of a federal constitutional issue was either "'contrary to ... clearly established Federal law' or 'involved an unreasonable application ... of clearly established Federal law.'" *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.)(quoting 28 U.S.C. § 2254(d)(1))(alterations in original), *cert. denied*, 534 U.S. 886 (2001).  The statute further provides that the court may grant a writ of habeas corpus when a claim that was considered on the merits by the state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-13 (1995).  When presented with these questions, the court was empowered to conduct an independent review of the record.

*Id.*  The factual findings of the state court, however, were presumed to be correct absent circumstances listed in the statute, such as cases in which the factual finding was not fairly supported by the record.  28 U.S.C. § 2254(d) & (d)(8).  The AEDPA requires the court to apply a more deferential standard, placing new restrictions on the power of federal courts to grant writs of habeas corpus to state inmates. *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

In order to apply the AEDPA standard, the petitioner's claim must have been "adjudicated on the merits" in the State court proceedings. 28 U.S.C. § 2254(d)(1). Additionally, the AEDPA provides that a state court's fact findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. *Id.* § 2254(e)(1).  If the State court has failed to adjudicate a claim "on the merits", the pre-AEDPA standard of review applies, and the court reviews both questions of law and mixed questions of law and fact *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

A state court's decision is contrary to federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. at 413.  A state court unreasonably applies clearly established federal law when the correct principle is identified, but the state court unreasonably applies that principle to the facts of the

14

petitioner's case. *Id.*

## 4.  **Guilty Plea**

The issue that petitioner wishes to challenge in this proceeding is whether his Fifth Amendment right against self-incrimination and his Sixth Amendment right to a jury trial were violated when the Court of Appeals refused to vacate petitioner's guilty plea, which was entered under a statute that was subsequently found unconstitutional based on *United States v. Jackson*, 390 U.S. 570 (1968).  The State court clearly decided this federal constitutional issue on the merits, interpreting Supreme Court precedent.  Thus, this court must apply the AEDPA standard and must determine whether the New York Court of Appeals acted contrary to or unreasonably applied the Supreme Court law that it interpreted in its decision.

In *United States v. Jackson*, the Supreme Court invalidated the portion of the Federal Kidnaping Act , 18 U.S.C. § 1201(a), providing that the death penalty could only be imposed after a jury trial.  The Court in *Jackson* specifically stated that its "problem" was to determine whether the constitution permitted the establishment "of such a death penalty", applicable only to those who asserted the right to contest their guilt by exercising their right to trial. 390 U.S. at 581.  The court stated that the effect of the establishment of this type of two-tiered system was to discourage the assertion of a defendant's Fifth Amendment right not to plead guilty and his or her Sixth Amendment right to a jury trial. *Id.*

15

The *Jackson* court held that the death penalty clause of the Federal Kidnaping Act was ***unenforceable***, but that the clause was severable from the rest of the Act. *Id.* at 585-86, 591.  The effect of the Supreme Court's action was that defendants could still be prosecuted under the Act, but not ***put to death*** under its authority. *Id.*  The posture of the case in *Jackson* was that the District Court had dismissed the defendant's indictment under the Federal Kidnaping Act based upon its finding that the death penalty provision was unconstitutional.

Although the Court in *Jackson* discussed the statute's effect of discouraging a defendant's assertion of his right not to plead guilty, the issue in *Jackson* was the ability of a court to impose a death penalty under the Act, ***not*** the invalidity of a guilty plea taken under the Act.  In fact, in a post-*Jackson* case, the Supreme Court specifically held that an otherwise voluntary guilty plea would not be invalid simply because the statute under which the plea was taken was later held to have a *Jackson* defect. *Brady v. United States*, 397 U.S. 742 (1970).  The petitioner in *Brady* challenged his guilty plea under the same portion of the Federal Kidnaping Act that was subsequently invalidated in *Jackson. Id.*  The petitioner argued that since the "inevitable" effect of the death penalty provision was said to be the "needless encouragement of pleas of guilty and waivers of jury trial", then *Jackson* required the invalidation of every plea of guilty under that section of the Federal Kidnaping Act, at least when the fear of death was shown to be a factor in the plea. *Id.* at 746.

The Court in *Brady* stated that the petitioner "has read ***far too much into the Jackson opinion***." *Id.*  The court then held that although *Jackson* prohibited the ***imposition of the death penalty*** under the Federal Kidnaping Act, *Jackson* did ***not*** rule that all guilty pleas encouraged by the fear of a possible death sentence were involuntary, ***nor*** did it rule that a plea that was so encouraged was invalid, whether involuntary or not. *Id.* at 746-47.

The court in *Brady* also stated that *Jackson* did ***not*** fashion a new standard for judging the validity of a guilty plea, and re-stated its prior ruling that guilty pleas are valid if both ***voluntary*** and ***intelligent***. *Id.* at 749-50.  The court also made it clear that a plea of guilty was not ***invalid*** merely because it was entered to avoid the possibility of the death penalty. *Id.* at 755.  *Jackson* did not hold that the section 1201(a) of the Federal Kidnaping Act was "inherently coercive" of guilty pleas, and the fact that the Act tended to discourage defendants from insisting on their innocence and demanding a jury trial "hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily." *Id.* at 746-47.  Thus, the ultimate question was still whether the plea was voluntary and intelligent, considering all the relevant circumstances surrounding the plea. *Id.* at 747 (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)).

In *Hynes v. Tomei*, *supra*, the New York Court of Appeals held that New York's death penalty statute suffered from the same defect as did the death penalty provision

in the Federal Kidnaping Act, invalidated in *Jackson*.  The court in *Hynes* declared

that N.Y. Crim. Proc. Law §§ 220.10(5)(e) and 220.30(3)(b)(vii) were

unconstitutional because they set up the same two-tiered penalty procedure for the

same crime, and allowed the death penalty to be imposed only on those defendants

who asserted their right to a jury trial. *Id.*  The court only invalidated those sections of

the statute. *Id.* 92 N.Y.2d at 630, 684 N.Y.S.2d at 185, 706 N.E.2d at 1209.  The court

stated that ***after severing*** the sections of the statute, "under the resulting statute, a

defendant may not plead guilty to first degree murder while a notice of intent to seek

the death penalty is pending." *Id.* 92 N.Y.2d at 629, 684 N.Y.S.2d at 184-85, 706

N.E.2d at 1208-09.

     *Hynes* was decided subsequent to this petitioner's plea, but prior to his

sentencing.  Petitioner moved to withdraw his plea, but Judge Bartlett denied the

motion.  The Appellate Division reversed, finding that *Jackson-Hynes* would

invalidate petitioner's plea.  However, the New York Court of Appeals found that this

petitioner's case was "directly on point" with *Brady*, and that Supreme Court

precedent did ***not*** require the invalidation of petitioner's guilty plea as long as the plea

was voluntary. *People v. Edwards*, 96 N.Y.2d at 454-55, 729 .Y.S.2d at 415-16, 754

N.E.2d at 174-75.  In analyzing petitioner's case, the New York Court of Appeals

cited *Brady* extensively. *Id.*

     The New York Court of Appeals stated that *Brady*'s ruling expressly covered

the issue of whether a guilty plea taken under a *Jackson*-defective statute was

***involuntary*** as well as whether the guilty plea taken under the same statute was

***invalid*** whether it was voluntary or not. *Id.* 96 N.Y.2d at 455, 729 .Y.S.2d at 416, 754

N.E.2d at 175.  Even in *Hynes*, the New York Court of Appeals noted that in the years

following *Jackson*, the Supreme Court had made it clear that *Jackson* did not create a

new test for determining the validity of guilty pleas, but rather prohibited the Federal

Kidnaping Act's impermissible burden on the defendant's exercise of his

constitutional rights. 92 N.Y.2d at 623 n.3, 684 N.Y.S.2d at 181 n.3, 706 N.E.2d at

1205 n.3.  The court cited three post-*Jackson* Supreme Court cases that refused to

invalidate guilty pleas simply because they were agreed to pursuant to statutes that

were subsequently invalidated by *Jackson. Id.* (citing *Brady, supra*, *North Carolina v.*

*Alford*, 400 U.S. 25 (1970)(plea not involuntary because it was entered to avoid the

possibility of the death penalty), *Parker v. North Carolina*, 397 U.S. 790

(1970)(same).

     The New York Court of Appeals ultimately found that based on Supreme Court

precedent, that neither *Jackson* nor *Hynes* would invalidate petitioner's guilty plea in

this case.  After this court's review of the Supreme Court precedent, I must find that

the New York Court of Appeals did not act contrary to or unreasonably apply the

Supreme Court law.  In fact, the New York Court of Appeals correctly found that

petitioner's case was on point with *Brady* and the cases following *Brady*, holding that

the real issue was whether the petitioner's plea was voluntary.  Petitioner in this case never claimed that his plea was *involuntary*, he argued that the plea was *invalid* because the statute under which the plea was taken was *subsequently* invalidated by *Hynes*.

A guilty plea must represent a voluntary and intelligent choice among the alternative courses of action open to the individual. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  When a defendant pleads guilty, he must do so with a full understanding of the consequences of his plea. *Rowe v. Miller*, 299 F. Supp. 2d 231, 240 (S.D.N.Y. 2004)(citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A review of the plea proceedings in this case shows that petitioner knew exactly what he was doing when he pled guilty.  Judge Bartlett had even anticipated the problem that was subsequently resolved in *Hynes* and attempted to cure the defect by having the prosecutor withdraw the death notice prior to accepting petitioner's plea.  As stated above, the ramifications of pleading guilty were discussed with petitioner by counsel and by the court.

Petitioner had two attorneys throughout the plea proceedings, and the plea colloquy shows that petitioner was pleading guilty because he was guilty of the crime.  As stated in *Brady* and subsequent cases, the fact that petitioner pled guilty to avoid a greater sentence does not show that his plea was involuntary.  Petitioner was well-aware of the rights that he was giving up by pleading guilty.  Thus, petitioner's guilty plea claims may be dismissed.

**WHEREFORE,** based on the above, it is

**RECOMMENDED,** that the petition be **DENIED** and **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 2, 2005

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

21